**In the Interest of T.M.A., Minor, Plaintiff,**

**John JOHNSON, Juvenile Officer, Respondent,**

v.

**T.M.W., Appellant.**

**No. WD 44606.**

Missouri Court of Appeals, Western District.

Feb. 25, 1992.

David R. Schmitt, St. Joseph, for appellant.

James A. Nadolski, St. Joseph, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Appellant appeals the Juvenile Court's judgment to terminate appellant's parental rights to his child, T.M.A. The court decided, pursuant to § 211.447.2(1)(b), RSMo 1986, that appellant had abandoned his son. We affirm.

T.M.A. was born on February 14, 1985, in St. Joseph while appellant lived, out of wedlock, with T.M.A.'s mother. T.M.A. suffered from several severe physical and mental impairments, including Down's Syndrome. During late 1990, T.M.A. functioned at the level of a two-year-old child. T.M.A. has required five surgeries, 19 hospitalizations and more than 75 visits to a doctor's office during his young life.

T.M.A. was in his mother's custody during December 1985 when the Missouri Division of Family Services (DFS) received reports that the child was suffering from abuse and neglect. Appellant and T.M.A.'s mother were no longer living together. On June 19, 1986, the Juvenile Court determined that T.M.A. had failed to thrive because of environmental causes and that his mother and father were unable to meet his nutritional and developmental needs. On December 18, 1986, the court placed T.M.A. in DFS' care and custody. On October 16, 1987, T.M.A.'s mother relinquished her parental rights after DFS unsuccessfully attempted to reunite her with the child. On

April 28, 1988, the court found that T.M.A. should remain in foster care.

In the meantime, on October 1, 1986, appellant moved from St. Joseph to Topeka, Kansas, about 80 miles away, where he was in and out of three jobs during the next four years. During 1987, appellant began complaining of physical problems related to dizziness, but he offered the Juvenile Court no proof that he had sought medical treatment for his problem.

Appellant made no support payments for T.M.A.'s care, never wrote or telephoned his son, or gave him any gifts for birthdays or Christmas. During 1986, appellant briefly visited T.M.A. once while the boy was in the hospital and twice at DFS offices. Appellant did not visit his child again until 1988 when T.M.A. was again hospitalized, and he visited him once more that year in DFS offices. During 1989, appellant visited T.M.A. once at DFS offices and saw him twice at Juvenile Court dispositional hearings. He did not visit T.M.A. after that. Although invited, appellant did not attend eight consecutive Permanency Planning Review Team meetings scheduled between November 1986 and August 1990.

On June 29, 1989, DFS presented appellant with a written service agreement which required him to travel to St. Joseph every fortnight for two months and to attend conferences with T.M.A.'s foster parents, therapists, case manager and treating physician. Appellant refused to sign the agreement, and in October 1989 asked DFS to renegotiate it. DFS refused.

On August 7, 1990, juvenile officers requested the Juvenile Court to terminate appellant's parental rights. The Juvenile Court heard evidence on November 29, 1990, and on December 6, 1990, and entered its order on February 2, 1991, to terminate appellant's parental rights. In its findings of fact, conclusions of law and judgment, the Juvenile Court stated:

> The Juvenile Office has proven by clear, cogent and convincing evidence that termination of parental rights of [appellant], as to the child, [T.M.A.], should be had under Section 211.477.-

2(1)(b) and Section 211.447.2(2)(d) and Section 211.447.2(3), R.S.Mo.

Appellant contends that the Juvenile Court erred in terminating appellant's parental rights because it had insufficient evidence to support its findings. We need not reach all of the points raised by appellant because we conclude that the Juvenile Court clearly had sufficient evidence to find abandonment.

Appellant excuses his total lack of support for his son and his infrequent, brief visits as resulting from his poverty, illness and 80 mile separation from his son. Appellant says he did not send his son any money because he was often unemployed and had little money. He was supporting himself and two other children in Topeka, and he believed that T.M.A. was receiving Social Security income. He rarely visited his son, he said, because of his dizzy spells which kept him from driving a car. He said that he saw no need to write his son because the boy could not read.

Juvenile officials counter that when appellant was still living in St. Joseph, he saw his son only twice. When appellant was working—he worked continually through November 30, 1987—he shared none of his income with his son. When DFS initiated proceedings to terminate his parental rights, he was able to travel to St. Joseph twice in one week.

We conclude that the Juvenile Court's finding of abandonment was supported by clear, cogent and convincing evidence. Appellant demonstrated a virtual lack of interest in his son. During a 17 month period, appellant did not see his son at all. "[I]ntent, an inferred fact, is determined by considering all the evidence of the parent's conduct." *Matter of T.C.M.*, 651 S.W.2d 525 (Mo.App.1983). We conclude that he exhibited an intent during that time to foresake his role as T.M.A.'s father. We affirm the Juvenile Court's judgment.

All concur.